## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EILEEN FLEISCHMAN; | ) |
| KATHLEEN ANNE RIDER; | ) |
| JUSTIN DYLAN RIDER; | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )   Case No. CIV-06-320-M |
| | ) |
| CHARLES P. HORTON; | ) |
| DAVITT LIMITED PARTNERSHIP; | ) |
| DAVITT MANAGEMENT TRUST; | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is defendants Davitt Limited Partnership and Davitt Management Trust's

Motion to Dismiss, filed June 30, 2006.  On July 28, 2006, plaintiffs filed their response.  Also

before the Court is defendant Charles P. Horton's Motion to Dismiss, filed July 3, 2006.  On July

28, 2006, plaintiffs filed their response, and on August 15, 2006, Horton filed his reply.  Based upon

the parties' submissions, the Court makes its determination.

I.      Introduction[1]

Plaintiff Eileen Fleischman ("Fleischman") is the daughter of Norma J. Davitt ("Davitt"),

and plaintiffs Kathleen Anne Rider and Justin Dylan Rider are the children of Fleischman and the

grandchildren of Davitt.  On or about July 15, 2005, Davitt passed away.

While Davitt was alive, defendant Charles P. Horton ("Horton") served as her attorney and

advisor.  As part of his estate planning advice to Davitt, Horton drafted an irrevocable management

trust entitled the "Davitt Management Trust" ("DMT"), a defendant in this action.  On or about May

---

[1]This introduction is based upon the facts set forth in plaintiffs' Complaint.

31, 2000, Davitt executed the DMT.  Horton is the current successor trustee of the DMT, and plaintiffs are the beneficiaries of the DMT.

Additionally, as a further part of his estate planning advice to Davitt, Horton drafted the Davitt Limited Partnership ("DLP"), a defendant in this action.  Davitt executed the DLP on or about June 9, 2000.  The DMT is the general partner of the DLP and a 1% owner of the DLP.  Davitt was a limited partner owning 99% of the DLP.  Pursuant to Horton's estate planning advice, Davitt put substantially all of her assets into the name of the DLP, which consisted of an estimated $850,000 of liquid assets.

Horton also drafted a management service agreement between the DMT and the DLP, which Davitt executed on or about May 31, 2000, on behalf of both the DMT and the DLP.   Under the management agreement, the DMT, via the trustee, manages the assets of the DLP on behalf of the DLP.

Finally, Horton drafted Davitt's last will and testament ("Will"), which Davitt executed on or about May 19, 2003.  Under the Will, all of Davitt's property was to be distributed to the DLP.  Included in her property to be distributed was Davitt's 99% ownership interest in the DLP.  Additionally, the Will provides that Horton shall serve as the personal representative of Davitt's estate.

Plaintiffs assert Horton wrongfully exercised undue influence on Davitt in having her execute the above documents.  Plaintiffs further assert that during Davitt's lifetime, Horton failed and refused to provide any information, accountings, or documents to Davitt and that Horton failed to advise Davitt of his potential, ultimate, and resulting conflict of interest and his self dealing.  Additionally, plaintiffs contend that through the DLP, the DMT, and the management agreement,

Horton effectively denied Davitt any access to her assets and her records, leaving her nearly penniless at times and without the ability to pay her living expenses, while self dealing to his personal gain.  Finally, plaintiffs assert that Horton charged and continues to charge unreasonable and unnecessary fees and expenses via the DLP, the DMT, the management agreement, and as the special administrator and executor for Davitt's estate.

On March 27, 2006, plaintiffs filed the instant action, alleging the following claims:  (1) malpractice, (2) breach of fiduciary duty, (3) disgorgement/restitution/unjust enrichment, (4) fraud, (5) declaratory judgment finding the DMT, the DLP, and the management agreement invalid, ineffectual, void, and against public policy, (6) accounting, and (7) punitive damages.[2]  Defendants now move to dismiss this action.

II.    Discussion

    A.    Horton's motion to dismiss

Pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6), and 17(a), Horton moves the Court to dismiss all of plaintiffs' claims asserted against him.  Initially, Horton asserts that none of the claims asserted against him are based on any injury to plaintiffs, separate and apart from Davitt's estate.  Because none of the plaintiffs is the executor for Davitt's estate, Horton, therefore, asserts that plaintiffs are not the real party in interest.

Federal Rule of Civil Procedure 17(a) provides, in pertinent part: "Every action shall be prosecuted in the name of the real party in interest."  The "real party in interest" is "the one who, under applicable substantive law, has the legal right to bring the suit."  *Boeing Airplane Co. v. Perry*,

_____

[2]Plaintiffs' first through fourth, sixth, and seventh claims are asserted against Horton. Plaintiffs' fifth claim is asserted against DMT and DLP.

322 F.2d 589, 591 (10th Cir. 1963).

Under Oklahoma law, it is the executor or administrator of the estate that has the legal right to bring suit on behalf of the estate. *See* Okla. Stat. tit. 58, § 252 ("Actions for the recovery of any property, real or personal, or for the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators . . . ."); Okla. Stat. tit. 58, § 253 ("Executors and administrators may in like manner maintain actions against any person who has wasted, destroyed, taken or carried away, or converted to his own use, the goods of their testator or intestate in his lifetime. . . ."). Only when "there is no administration proceeding pending, or the property involved is not subject to administration, or all debts have been paid and plaintiff is the sole heir, or the probate court has decreed distribution, [do] heirs have the right to sue without joining the administrator." *Simon v. Shaffer*, 11 F. Supp. 450, 452 (N.D. Okla. 1935).

In the case at bar, the probate of the Will has commenced, and no decree of distribution has been entered. Accordingly, the Court finds that any claims brought on behalf of Davitt's estate and any claims based solely upon injury to Davitt and/or her estate must be brought by the executor or administrator of Davitt's estate. Because plaintiffs are not the executors or administrators of Davitt's estate, the Court, therefore, finds that any claims in this action brought based solely upon injury to Davitt and/or her estate and brought on behalf of the estate should be dismissed.

In their response to Horton's motion to dismiss, plaintiffs assert that because Horton is the executor of Davitt's estate, it is unlikely that Horton will pursue claims against himself and that it would be inequitable to dismiss this action on this basis. While the Court is sympathetic to plaintiffs' position, the Court finds that plaintiffs have the right to oppose Horton being appointed as the executor of Davitt's estate or can move the probate court to remove or suspend him as the

executor for the purpose of maintaining an action based upon Horton's conduct in advising Davitt regarding her estate planning. *See* Okla. Stat. tit. 58, § 104; Okla. Stat. tit. 58, § 234. As such, the Court finds that plaintiffs do have another avenue of redress and that it would not be inequitable to dismiss those claims based solely upon injury to Davitt and/or her estate and brought on behalf of the estate.

Having carefully reviewed the Complaint, the Court finds that the following claims, in whole or in part, are based upon injury to Davitt and/or her estate and are brought on behalf of the estate and, to the extent they are brought on this basis, should be dismissed: (1) the malpractice claim, (2) the breach of fiduciary duty claim,[3] (3) the disgorgement/restitution/unjust enrichment claim, (4) the fraud claim, and (5) the claim for an accounting.[4] The Court, however, further finds that plaintiffs have asserted some claims based upon injury to themselves and for which they have an independent cause of action separate and apart from Davitt's estate and that these claims should not be dismissed. Specifically, the Court finds that the following claims, to the extent they are brought separate and apart from Davitt's estate, should not be dismissed: (1) the malpractice claim, (2) the disgorgement/restitution/unjust enrichment claim, and (3) the claim for an accounting.[5]

---

[3]The Court would note that while Horton as the trustee of the DMT owes plaintiffs, who are the beneficiaries of the DMT, a fiduciary duty and would be liable to plaintiffs for any breach of that duty, the breach of fiduciary duty claim set forth in the Complaint is based solely on Horton's attorney-client relationship with Davitt. As such, the breach of fiduciary duty claim must be dismissed in its entirety.

[4]Additionally, in their response to Davitt's motion to dismiss, plaintiffs concede that their seventh cause of action for punitive damages is not a separate cause of action. Because it is not a separate cause of action, the Court finds that plaintiffs' seventh cause of action should be dismissed but that plaintiffs may continue to seek punitive damages if such damages are compensable under the remaining causes of action.

[5]Because plaintiffs are the beneficiaries of the DMT, the Court finds that plaintiffs may bring an action against Horton, as the trustee of the DMT, for disgorgement/restitution/unjust enrichment

Finally, in his motion to dismiss, Horton asserts that plaintiffs' malpractice claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, Horton asserts that because plaintiffs never maintained an attorney-client relationship with him, they cannot maintain a claim for legal malpractice.

When reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court accepts "as true all well-pleaded facts, as distinguished from conclusory allegations, and view[s] those facts in the light most favorable to the nonmoving party." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998). "A complaint may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if the plaintiff can prove no set of facts to support a claim for relief." *David v. City and County of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996) (internal quotations and citations omitted).

"Oklahoma recognizes that a duty may be created by a contract which is made expressly for the benefit of a third-party non-client beneficiary when harm to the beneficiary is foreseeable." *Hesser v. Cent. Nat'l Bank & Trust Co. of Enid*, 956 P.2d 864, 867 (Okla. 1998). Additionally, the Oklahoma Supreme Court has found that an intended will beneficiary may maintain a legal malpractice action against the drafter of the will when the will fails to identify all the decedent's heirs as a result of the attorney's substandard professional performance or when the attorney fails to have the will properly executed. *See Leak-Gilbert v. Fahle*, 55 P.3d 1054, 1055 (Okla. 2002); *Hesser*, 956 P.2d at 867-868. The Oklahoma Supreme Court has stated:

> *Hesser* teaches that when a lawyer undertakes to fulfill the testamentary instructions of a client, the lawyer must be aware that any consequences flowing from the lawyer's negligence will have an

and for an accounting. *See Robinson v. Kirbie*, 793 P.2d 315 (Okla. Civ. App. 1990).

impact on the named beneficiaries.  The failure of a testamentary scheme deprives the intended beneficiaries of their bequests.  If the failure is due to substandard performance, it is reasonable to conclude that the injured parties should recover against the lawyer who caused their harm.  *Dabney*[6] teaches that when a third party, non-client is the person specifically intended to be benefitted by the legal services, the non-client may assert a breach of contract action against the lawyer.

*Leak-Gilbert*, 55 P.3d at 1062.

Because plaintiffs have alleged that they are the intended beneficiaries of Davitt's testamentary scheme and that they have been injured as a result of Horton's substandard performance in advising and implementing the estate plan for Davitt, the Court finds that plaintiffs may maintain an action for malpractice against Horton.  The Court, therefore, finds that plaintiffs' malpractice claim should not be dismissed.

B.      DLP and DMT's motion to dismiss

DLP and DMT move this Court to dismiss plaintiffs' declaratory judgment claim against them.[7]  First, DLP and DMT assert that this Court does not have jurisdiction over them due to the lack of a justiciable controversy between them and plaintiffs.

The Declaratory Judgment Act provides, in pertinent part:

> *In a case of actual controversy* within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may declare* the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (emphasis added).  Under the Declaratory Judgment Act,

---

[6]*Great Plains Fed. Sav. and Loan Ass'n v. Dabney*, 846 P.2d 1088 (Okla. 1993).

[7]Under their fifth cause of action, plaintiffs "request that this Court, pursuant to 28 U.S.C. § 2201, enter its declaratory judgment finding the TRUST, the LP, and the Management Agreement invalid, ineffectual, void, and against public policy."  Complaint at ¶ 46.

> [t]he controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests.  It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character. . . . The declaration of rights, however, need not include injunctive or monetary relief.  Nor need the relief granted entirely dispose of the matter.

*Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1273-74 (10th Cir. 1989) (internal quotations and citations omitted).  "[T]he test is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Id.* at 1274 (internal quotations and citation omitted).  Further, "[t]he Declaratory Judgment Act was an authorization, not a command.  It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.  Whether to entertain a justiciable declaratory judgment action is a matter committed to the sound discretion of the trial court."  *Id.* at 1273 (internal quotations and citations omitted).

Having carefully reviewed the Complaint and the parties' submissions, the Court finds that there is an actual controversy in this case as required by the Declaratory Judgment Act and that this Court, accordingly, has jurisdiction over plaintiffs' declaratory judgment claim.  Specifically, the Court finds that there is a substantial controversy between plaintiffs and DLP and DMT as to the validity of the DLP, the DMT, and the management agreement and that this controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Further, the Court finds that if this Court did not entertain plaintiffs' declaratory judgment claim, any relief granted on plaintiffs' remaining claims could possibly be insufficient, and, consequently, the Court finds in its discretion that the Court should entertain plaintiffs' claim.

DLP and DMT further assert that this Court should not entertain plaintiffs' declaratory judgment claim because the probate of the Will is currently pending in Greer County, Oklahoma and

8

that plaintiffs' challenges to the validity of the DLP, the DMT, and the management agreement should be handled in the probate case.  Probate judicature, however, is limited in scope and confined to:  (1) ascertaining whether decedent died testate or intestate, (2) if testate, what testamentary disposition, if any, may be admitted to probate, (3) the administration of the estate's assets, and (4) the final account and distribution.  *Williams v. Mulvihill*, 846 P.2d 1097, 1102 (Okla. 1993).  The Court, thus, finds that it is unlikely that the probate court would have jurisdiction to address the validity of the DLP, the DMT, and the management agreement.  Additionally, only Fleischman is a party to the probate case.  In light of the above, the Court finds it should entertain plaintiffs' declaratory judgment claim.

Finally, DLP and DMT assert that because plaintiffs are not partners of the DLP, they do not have standing to dissolve the DLP.  Having carefully reviewed the Complaint, the Court finds that plaintiffs are not seeking to dissolve the DLP but are seeking to have this Court find that the DLP, the DMT, and the management agreement are void *ab initio*.  Because plaintiffs are not seeking to dissolve the DLP, the Court finds that they do not have to be partners of the DLP to have standing to bring their declaratory judgment claim.

Accordingly, the Court finds that DLP and DMT's motion to dismiss should be denied.

III.   Conclusion

For the reasons set forth above, the Court:

(A)     GRANTS IN PART and DENIES IN PART Horton's Motion to Dismiss [docket no. 11] as follows:

(1)     The Court GRANTS the motion to dismiss as to plaintiffs' breach of fiduciary duty claim (Count II), plaintiffs' fraud claim (Count IV), plaintiffs' punitive damages claim (Count VII), to the extent it is asserted as a separate cause of action, and plaintiffs' malpractice claim (Count I), plaintiffs' disgorgement/restitution/unjust enrichment claim (Count III), and plaintiffs'

accounting claim (Count VI), to the extent they are brought based upon injury to Davitt and/or her estate and are brought on behalf of the estate, and

(2)     The Court DENIES the motion to dismiss as to plaintiffs' malpractice claim (Count I), plaintiffs' disgorgement/restitution/unjust enrichment claim (Count III), and plaintiffs' accounting claim (Count VI), to the extent they are brought separate and apart from Davitt's estate, and

(B)     DENIES DLP and DMT's Motion to Dismiss [docket no. 8].

**IT IS SO ORDERED this 4th day of December, 2006.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE